# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN PLOSKI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-2306 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Chicago Police Officer B. MEDENICA, | ) | |
| Star # 13522, and the CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Ploski ("Plaintiff") brings this action against Defendant Officer Bogdan Medenica ("Defendant Medenica") and Defendant City of Chicago ("Defendant City"). Specifically, Plaintiff asserts that Defendant Medenica used excessive force against him in violation of 42 U.S.C. §1983 (Count I) and that Defendant City is required to indemnify Medenica under Illinois law (Count III).[1] The facts in this case are straightforward and largely undisputed except for whether the Defendant Officer's conduct was accidental or intentional. For purposes of the instant motion for summary judgment [51], the Court assumes the latter. The pivotal question is whether that conduct—which consisted of Medenica striking Ploski in the head with a baton at a police academy training exercise—raises a claim for battery under state law or for a violation of the Fourth Amendment under the federal Constitution. Because there is no clearly established law supporting the federal theory of liability, Medenica is entitled to qualified immunity on Count I. And as that is the only federal claim, Ploski must pursue any recovery in a refiled action in the Illinois courts, which remain open to him for a period of one-year (see 735

---

[1] In his response brief [see 55, at 1], Plaintiff concedes that he cannot maintain a claim for *respondeat superior* and thus has agreed to dismissal of Count II.

ILCS 5/13-217). In sum, the Court grants Defendants' motion for summary judgment on Count I on qualified immunity grounds, dismisses Count II with prejudice, and declines to exercise supplemental jurisdiction over Count III, which is dismissed without prejudice. The Court will enter a Rule 58 final judgment and close this case.

## I. Background

The Court takes the relevant facts primarily from the parties' Local Rule 56.1 statements, [53], [56], [57], and [58]. The following facts are undisputed except where a disagreement between the parties is noted.

This Court has subject matter jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. § §1331 and 1367. Venue in this judicial district is proper because the events alleged in Plaintiff's complaint occurred within the Northern District of Illinois and Defendants reside in or are located in this District.

On August 23, 2016, Defendant Medenica struck Plaintiff in the head with an expandable metal baton. At the time of the incident, Plaintiff was a recruit in the Chicago Police Department ("CPD") Training Academy Class 16-3C. Plaintiff was attending a training on the use of batons taught by Defendant Medenica, a police officer and gym instructor for the recruits. Plaintiff began the session by standing with the other recruits in a block formation of approximately three rows of nine. Defendant Medenica told the recruits not to hit anyone in the head, neck, or spine or back with a baton.

Plaintiff's account of the training session is as follows. Shortly after the session began, Defendant Medenica pulled Plaintiff out of the front line of the formation by his collar and performed an "arm-bar" type technique on him using a collapsible metal baton for leverage. Defendant Medenica was showing the class how to use the baton to put pressure on someone's

2

shoulder. When Defendant Medenica released Plaintiff, he asked if the arm-bar hurt. Plaintiff said "No," in an effort to demonstrate that he was tough enough to be a police officer. Defendant Medenica tapped Plaintiff on the chest with the baton and said, "That's not good." Plaintiff returned to his position in the front line of the block formation and Defendant Medenica walked to the end of the formation on Plaintiff's left side. A few seconds later, Defendant Medenica walked aggressively toward Plaintiff. Defendant Medenica was not holding the baton closed with his thumb. He "loaded up" his baton-holding arm, made a punching motion towards Plaintiff with the baton in his hand, and struck Plaintiff with the baton on the left side of his forehead.

Defendant Medenica does not recall which recruit he used for the armbar demonstration and denies that he hit Plaintiff intentionally. Viewing the facts in the light most favorable to Plaintiff for the purposes of this motion, the Court accepts that Defendant Medenica struck Plaintiff intentionally. The parties agree that Defendant Medenica's approach, swing, and baton strike were not part of any training exercise or classroom demonstration.

When the baton hit him, Plaintiff's vision went out briefly, he saw blood running down his arm, and he began to fall. Defendant Medenica caught Plaintiff and directed him to a chair. Defendant Medenica ran to another location, left Plaintiff alone in the chair, and returned with a compress for Plaintiff's head. Plaintiff walked to the locker room with a different instructor to wash out the laceration on his head and was taken by ambulance to the emergency room. He received stitches and was discharged that day. Plaintiff returned to the emergency room the next day because of continuing symptoms and was then diagnosed with a concussion. He was referred to a neurologist, who did not clear him to work for several weeks. Plaintiff sat out the rest of that term at the academy. He later graduated and is now a Chicago Police Officer.

On March 27, 2017, Plaintiff filed this lawsuit against Defendant Medenica and Defendant City alleging an excessive force claim against Defendant Medenica (Count I), *respondeat superior* liability against Defendant City (Count II), and indemnification against Defendant City (Count III). Pending before the Court is Defendants' motion for summary judgment [51].

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014) (quoting *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or

4

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp.*, 477 U.S. at 323. "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)); see also *Anderson*, 477 U.S. at 250. In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

### III. Analysis

The complaint [1] alleges an excessive force claim against Defendant Medenica (Count I), and *respondeat superior* liability (Count II) and indemnification (Count III) against Defendant City. By agreement, Count II is voluntarily dismissed with prejudice. And, because Defendant Medenica is entitled to qualified immunity on the excessive force claim, the Court grants Defendants' motion on Count I and dismisses the state law indemnity claim, Count III, as well.

#### A. *Respondeat Superior* Liability (Count II)

Plaintiff has agreed to dismiss Count II with prejudice. See [55] at 1.

#### B. Qualified Immunity

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," the Court begins its analysis there. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The

doctrine of qualified immunity protects public officials performing discretionary functions against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998) (citations omitted); see also *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law"); *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231). Here, Defendants have raised qualified immunity as a defense.

Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) "To defeat the qualified immunity defense, a plaintiff must show: (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Id.* at 919 (holding that these questions can be addressed in either order). In short, Plaintiff must show that police recruits have a *constitutional* right to be free from being struck by their instructors, and that right was clearly established when Defendant Medenica struck him. Plaintiff has done neither.

First Plaintiff has failed to show that, as a police recruit, he had a clearly established constitutional right to be free from being hit intentionally by an instructor during a training session at the police academy. Plaintiff cites no cases directly on point, and the Court is not aware of any precedent stating that freedom from battery in the police training context is a constitutional right. *Cf. Treiber v. Rompala*, 2002 WL 1467673, at *5 (N.D. Ill. July 9, 2002) ("While Plaintiff [a police

officer suing her supervisor] alleges contact * * * that might amount to a common law battery, she offers no legal precedent showing, or even suggesting, that it is clearly established that Plaintiff's constitutional rights were relevant to this interaction."). Furthermore, not every state law tort becomes a federally cognizable constitutional tort under § 1983 simply because it was committed by a state actor. See *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

Instead, Plaintiff notes that violations of constitutional rights may be "clearly established" if "a closely analogous case establishes that the conduct is unconstitutional," citing *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001). Plaintiff then asserts that under *Titran v. Ackman* "it would have been obvious to a reasonable officer that intentionally striking a defenseless person with a metal baton in the forehead violates the constitution[sic]." See [55] at 14 (citing *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990)).

*Titran* is not "closely analogous" to the instant case. In *Titran*, an arrestee sued law enforcement officers over their use of force while she was being moved from booking to pretrial detention. When she refused to put on an orange jumpsuit, officers "took off Titran's clothing and stuffed her into an orange jumpsuit * * * [T]he officers wrestled her to the ground and broke her wrist, and * * * also disabled her with a device that delivers a high-voltage shock (an XR 5000 "cattle prod") and temporarily prevents physical coordination." *Titran*, 893 F.2d at 145–46. Plaintiff in this case was not an arrestee who refused to obey law enforcement personnel; he was a police recruit who voluntarily attended the police academy. Plaintiff was not restrained by multiple officers on his way to pretrial detention; he was participating in a police academy training. And Plaintiff was struck by a baton during the class, not shocked with a cattle prod or similar device on his way to lockup. Plaintiff's concussion was a serious injury that seems comparable to, if not worse than, a broken wrist, but that similarity, in the face of significant differences with

7

the facts in *Titran*, does not make the two cases "closely analogous." Furthermore, Plaintiff does not explain why a case about an arrestee being moved to pretrial detention establishes a constitutional right for a police recruit. Plaintiff cites no other cases to support the proposition that Defendant Medenica is not entitled to qualified immunity, nor is the Court aware of any other cases that might apply.

Second, Plaintiff has failed to show that a constitutional violation—specifically, a seizure under the Fourth Amendment—took place. Claims of excessive force generally are analyzed under the Fourth Amendment's reasonable seizure standard. See *Graham v. Connor*, 490 U.S. 386, 395 (1989). Such a claim, however, requires a seizure of the complaining party. See *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir.1998). A seizure for purposes of the Fourth Amendment can occur when an officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (internal quote omitted); see also *Graham*, 490 U.S. at 395 n. 10 ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, * * * in some way restrained the liberty of a citizen.") (internal quotation omitted). A person is "seized" under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554; see also *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 720 (7th Cir. 2013). The Supreme Court further explained the circumstances that might indicate a seizure as follows: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. at 554; see also *Duran v. Sirgedas*, 240 Fed. Appx. 104, 110–111 (7th Cir. 2007). To demonstrate a seizure without force,

a plaintiff must show not only that her personal liberty had been restrained, *Florida v. Bostick*, 501 U.S. 429, 435–37 (1991), but also that she actually yielded to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); see also *Hawkins v. Mitchell*, 756 F.3d 983, 993 (7th Cir. 2014) ("[S]eizure of a person without physical contact is also possible—the officer must make a 'show of authority' that a reasonable person would understand to mean that she is not 'free to leave,' and she must submit to that show of authority.").

The relevant undisputed facts are that Defendant Medenica walked up to Plaintiff and struck him on the left side of his head with a baton. Plaintiff's vision faded out momentarily, and as he began to fall, Defendant Medenica caught him and directed him to a chair. Defendant Medenica then ran to another location, leaving Plaintiff alone in the chair, and returned with a compress for Plaintiff's head. Plaintiff then walked to the locker room to wash out the laceration on his head and was taken by ambulance to the emergency room.

Even when viewed in the light most favorable to Plaintiff, the facts do not show a seizure. There is no evidence that Defendant Medenica "intended to or did acquire physical control over [Plaintiff's] person." *McCoy v. Harrison*, 341 F.3d 600, 606 (7th Cir. 2003); see also *Brower v. Cty. of Inyo*, 489 U.S. 593, 596, (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."). After striking Plaintiff, Defendant Medenica did not physically restrain him, or otherwise act or give orders that would lead a reasonable person to believe he was not free to leave. See *Mendenhall*, 446 U.S. at 554. In fact, after helping Plaintiff to a chair, Defendant Medenica left the gym. He did return shortly with a cold compress, but after that Plaintiff walked away and went to the locker room. *Cf. McCoy*, 341 F.3d at 606 (plaintiff testified that after a brief altercation with a police officer, he "let [the plaintiff] go and just walked * * * back down the driveway"); *Lewis v. City of Chicago*, 2014 WL 1673377, at *3 (N.D. Ill.

9

Apr. 28, 2014) ("The record indicates that there was some type of altercation, but immediately after, Plaintiff went back into her home and Defendant Leveille left the premises.") The record does not contain evidence that Defendant Medenica made any show of authority without physical force, and even if he had, there is no evidence Plaintiff yielded to it. Defendant Medenica left the gym after striking Plaintiff, and after he returned, Plaintiff walked away toward the locker room, and later left the building with paramedics. Because the record does not contain evidence to support a finding of restraint or yielding to a show of authority, Plaintiff has failed to show that a seizure under the Fourth Amendment occurred.

Plaintiff argues that the single blow from Defendant Medenica should constitute a seizure, but the cases he cites are distinguishable. First, Plaintiff cites *Acevedo v. Canterbury*, in which a police officer punched the plaintiff in the head at a car impound lot. 457 F.3d 721, 725 (7th Cir. 2006). While superficially similar, the details of the circumstances in *Acevedo* are distinct. In that case, two officers approached Plaintiff late at night while he and three other men were attempting to retrieve a car from an impound lot. After a brief verbal altercation, the parties turned away from each other, then the police officer suddenly turned around and punched the plaintiff in the head. *Id.* at 723. In determining that a seizure occurred, the Seventh Circuit cited not only the plaintiff's fall to the ground, but also the fact that he was in a location "under the general control of the police (the auto pound)," that the plaintiff lost consciousness, and that the plaintiff "remained in a daze for a time," unable to move and unaware of his surroundings. *Id.* In contrast, the evidence before the Court shows that Plaintiff's condition, though serious, was not as severe as circumstances the Seventh Circuit addressed in *Acevedo*. Furthermore, the parties do not cite, and the Court is not aware of, any precedent that would allow the Court to treat a police instructor teaching a class for police recruits the same as a police officer confronting the subject of an emergency call.

10

*Bernal v. Johnson* is similarly distinguishable. 2014 WL 4976212 (N.D. Ill. Sept. 25, 2014). In that case, a correctional officer at a maximum-security prison sprayed four visitors to the prison with pepper spray. In denying the defendant's motion to dismiss, the Court determined that "Defendant deploying pepper spray onto Plaintiffs sufficiently raises the plausible inference that the restraint on their liberty was significant enough to constitute a seizure. *Id.* at *4. The court reasoned that the pepper spray immobilized the plaintiffs, they were unable to immediately go into their homes, and they were in a maximum-security prison, a "highly regulated environment under the Defendant's employer's control—which * * * already restricts movement." *Id.* Plaintiff in this case was not in a prison, did not experience the restrictions on movement that plaintiffs in *Bernal* did, and was able to move freely (to receive medical attention) after he was struck with a baton.

*Ali v. Vill. of Tinley Park* is harder to square with the other decisions in this circuit. 79 F. Supp. 3d 772, 774 (N.D. Ill. 2015). In *Ali*, the plaintiff was walking past a fire department when a firefighter sprayed him with a "powerful" fire hose. *Id.* at 774. In denying a motion to dismiss the court determined that "the allegation that [the defendant] intentionally used a fire hose to spray Ali plainly qualifies as a statement that a seizure took place." *Id.* at 778. While *Ali* seems to apply a lower threshold for the application of force that qualifies as a seizure, a single non-precedential decision about a firefighter hosing down a pedestrian does not allow Plaintiff in this case to establish that an instructor striking a recruit at a police academy qualifies as a seizure under the Fourth Amendment.

To be sure, as Defendants acknowledge, the evidence taken in the light most favorable to Plaintiff does not establish a right to be free from any potential liability at all on these facts. Indeed, if Plaintiff prevails at trial on his assertion that Defendant Medenica intentionally struck Plaintiff

on the head with a baton, he may have a successful claim for battery under state law. But, for all of the reasons stated above, Plaintiff has not shown a clearly established right under the Constitution—as opposed to state law—to haul Medenica into court to account for his conduct under the federal civil rights laws. Accordingly, the Court grants Defendants' motion for summary judgment on Count I.

C. **Plaintiff's State Law Claim**

Because the Court grants summary judgment on the sole claim (Count I) over which it has original jurisdiction, it must now address whether to retain jurisdiction over any remaining state law claim. See 28 U.S.C. § 1367(c)(3). In addition to a federal claim for excessive force, Plaintiff has asserted a state law claim for indemnity. And, as just discussed, the facts pled also state a plausible claim for state law battery. However, the Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir.1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir.1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993). Finding no justification for departing from that "usual practice" in this case,[2] the Court dismisses without prejudice Plaintiff's asserted state law claim for indemnification (Count III), as well as his

---

[2] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251–53 (7th Cir.1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id*. at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir.2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to analyzing either the asserted count or the potential (yet unasserted) state law count of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

unasserted yet viable state law battery claim. In dismissing Plaintiff's federal constitutional claims, the Court expresses no opinion on the ultimate merits of any state law claims that Plaintiff may wish to bring. See *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).

## IV. Conclusion

For the reasons explained above, the Court grants Defendants' motion for summary judgment on Count I on qualified immunity grounds, dismisses Count II with prejudice, and declines to exercise supplemental jurisdiction over Count III, which is dismissed without prejudice. The Court will enter a Rule 58 final judgment and close this case.

Dated: August 26, 2019

_____
Robert M. Dow, Jr.
United States District Judge